## JAMS ARBITRATION

|  |  |
|---|---|
| ANA LAPERA, | ) |
| Claimant, | ) |
| v. | ) No. 1410006405 |
| | ) |
| FEDERAL NATIONAL MORTGAGE ASSN. | ) |
| Respondent. | ) |

## AWARD

### Parties and Counsel

Claimant Ana Cristina Lapera is a resident of Virginia. She is represented by David A. Branch, Washington, D.C. Respondent Federal National Mortgage Association (FNMA or Fannie Mae) is a Government Sponsored Enterprise with corporate headquarters in Washington, D.C. It is represented by Ira T. Kasdan and Joseph D. Wilson of Kelley Drye & Warren LLP, Washington, D.C.

### Arbitration agreement and rules, and applicable law

This arbitration is governed by the procedures set forth in FNMA's Dispute Resolution Policy effective March 16, 1998, by the JAMS Employment Arbitration Rules and Procedures effective July 1, 2004, and by the Federal Arbitration Act. The applicable substantive law is set forth in the Civil Rights Act of 1866, 42 U.S.C. § 1981, the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401 et seq., and cases decided thereunder.

### Summary of claims and responses

Ms Lapera alleges discrimination on the basis of race and personal appearance. In pretrial proceedings, these claims were narrowed to Ms Lapera's more specific allegations that FNMA (i) unlawfully rejected her 2009 and 2011 challenges to FNMA's assignment of a classification level "M" to her job and (ii) unlawfully failed to select her for a posted position and promote her to vice-president.

FNMA asserts that Ms Lapera's claims related to her job classification are barred by the statute of limitations and further asserts that, if the claims are not barred, they are meritless. FNMA asserts that Ms Lapera's failure-to-promote claim is not cognizable under § 1981, which applies only to discrimination based on race, and denies that its selection of another person for the posted position in question had anything to do with Ms Lapera's personal appearance.

## Procedural history

Ms Lapera filed her demand for arbitration on October 24, 2013. The undersigned arbitrator was appointed and duly sworn in late November. Telephonic case management conferences were held in January and April 2014 and a scheduling order was issued on April 8. FNMA moved on August 12 to bar most of Ms Lapera's claims. Ms Lapera conceded the dismissal of her claim under Title VII of the Civil Rights Act of 1964 and the dismissal without prejudice of her demand for punitive damages. The balance of FNMA's motion was denied pending the development of a fuller record at trial. The merits hearing commenced on November 3. The arbitrator heard the testimony of Ms Lapera, Patricia Brumbaugh, Nicola Fraser, Melissa Werner, Shandell Harris, Jesus Lapera, Nicole Harris Westbrook, Anne Gehring, Leslie Arrington, and James Tomasello. The merits hearing was adjourned on November 6, and counsel submitted post-hearing memoranda on November 21.

## Opinion

### Race discrimination claims

For her claims of race discrimination, Ms Lapera invoked both the federal Civil Rights Act of 1866, 42 U.S.C. 1981, and the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401 et seq. FNMA moved before trial to bar the § 1981 claim because that statute is applicable only to claims of racial discrimination. The motion was denied because "a distinctive physiognomy is not essential to qualify for § 1981 protection," *St. Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 613 (1987), but the issue must now be considered moot, because, regardless of Ms Lapera's physiognomy or the color of her skin, and regardless of whether as a matter of law the status of being "Hispanic" entitles one to membership in a protected racial class, no evidence whatever of race discrimination was adduced during the four days of trial of this case.

The case is thus further narrowed to Ms Lapera's claims under the DCHRA that FNMA's 2009 and 2011 rejections of her job classification challenges and its 2012 failure to promote were motivated at least in part by her personal appearance.

### Job classification claims

Ana Lapera is 56 years old. She was born in Venezuela, educated there as a systems engineer, moved to the United States in 1984, earned a Master's degree in engineering administration at George Washington University, and went to work at FNMA as a systems engineering development manager in 1994. She rose steadily in FNMA's bureaucracy, earning promotions and favorable performance reviews, until the summer of 2009, which was the beginning of the period relevant to this dispute.

In 2009, as part of a company-wide restructuring of job codes, Ms Lapera's job title was changed to Director Operational Excellence and Lean Six Sigma and assigned to the Lean Six Sigma job family at the highest level available for that family, level M. On July 24, 2009, she challenged the M level. PX 10. At trial, Ms Lapera argued that her job should have been assigned level N, consistent with the job levels of two other directors with whom she worked and whom she considered peers, but there is no record of her having made that argument in 2009. Instead, she emphasized her own performance, PX 10, which was irrelevant to the job classification process. The FNMA bureaucracy swiftly determined that the duties of her job had been correctly mapped at Level M. DX 5.

Ms Lapera returned to the subject of her job classification in 2011, asking Shendell Harris, a FNMA human relations "business partner," for help. There is no written record of this request, and no evidence that the request was made with a claim of discrimination. Ms Harris sent Ms Lapera's job description to Nicole Harris, director of compensation, with the request that she "take a look." Nicole Harris did not recognize the request as a challenge. Her assistant Sharon Matza responded that the job still mapped to level M Six Sigma Director, but noted that Shandell Harris had now submitted "PEPs" with a request for a promotion for Ms Lapera. DX 11. PEP is the acronym for promotion and equity process (or program), by which a manager may request a promotion for a FNMA employee. Ms Matza recommended that Ms Lapera's salary be increased to the maximum of her level M range, creating a $28K or 17% differential from her direct reports. That never happened, because in the interim Ms Lapera's superiors were "discussing the future of the LSS space," DX 18. Late in 2011, working with her new supervisor Kathy Keller, Ms Lapera re-wrote her own job description, as Director, Process Improvement Strategy, DX 20, DX 25, and, in February 2012, she was formally designated as such, at a job classification level N.

The documentary history of record demonstrates an orderly and regular, if slow, process that ultimately resulted in a significant salary increase for Ms Lapera. No evidence or even hint of discrimination appears of record, and certainly none that has anything to do with Ms Lapera's personal appearance, weight, or body shape. Ms Lapera's claim of discriminatory rejection of job classification challenges fails for want of proof. FNMA's affirmative statute of limitations defense is moot.

### Non-promotion claim

In September 2012, Anne Gehring became senior vice-president of FNMA's Enterprise Program Management Office (EPMO), where Ms Lapera worked. By virtually all accounts, Ms Gehring was a brash and unpopular executive. She came to EPMO determined to "rebrand" it. She called a "town hall" meeting to explain her vision. She engaged an image consultant who conducted training programs that all employees were expected to attend – programs whose substance, at least as it was understood by some employees – seemed focused primarily on "aesthetics," or personal appearance. Mr Tomasello testified that "executive presence" was a theme

3

that Ms Gehring "beat the drum on," although, he said, she never really explained it. He thought it had something to do with ability to make presentations to higher executives. Mr Tomasello also said that Ms Gehring often made inappropriate comments, used profanity, referred to others as "less than smart," and was critical of others who were not in EPMO.

On June 3, 2013, FNMA officers and directors (Ms Lapera was a director) received a recruiting announcement for "vice-president for planning and alignment," a position that would report to Ms Gehring and be "responsible for facilitating consensus around a long-term, integrated execution plan for the restructuring of Fannie Mae and the housing industry." PX 45. Internal applicants were encouraged to express their interest and submit their credentials not later than June 10. On June 12, Melissa Werner, a FNMA recruiting officer, advised Gehring that eleven candidates had applied, one of whom was Ms Lapera. The next day, Ms Werner advised Ms Gehring that she had winnowed the list of applicants to five, one of whom was Ms Lapera. PX 48. On July 4, Nicola Fraser advised Ms Werner that she was applying for the job, noting that she had "discussed and shared the news with Anne" the previous day. PX 53. Ms Werner passed that e-mail on to Ms Gehring on July 8, and two hours later Ms Gehring instructed Ms Werner to begin the interviewing process as quickly as possible. Ms Werner confirmed her understanding that the five candidates plus Ms Fraser had been winnowed again, presumably by Ms Gehring (the record is not clear on this point) to three – Nicola Fraser, Joe Hallet, and Ms Lapera. Id.

Interviews of the three candidates were promptly conducted, by Ms Gehring, Shandell Harris, and Mike Choi. This interview panel was handpicked by Ms Gehring. Mr Choi was the vice-president who reported to Ms Gehring and who would be a peer of the selectee. Ms Harris was, by virtue of her experience, practically an ex officio member. All three interviewers found Nicola Fraser to be the strongest candidate:

- Shandell Harris found her "by far the best candidate." Ms Lapera, she observed, had "good leadership skills," but needed development of "executive presence and communicating with the OC and MC." PX 49. She elaborated on this point in her trial testimony: Ms Lapera tended to ramble, she said; she needed to be crisp and to the point, and provide detail as requested.
- Mike Choi had nothing negative to say about Ms Lapera but wrote that Ms Fraser would "add the most value to the team at this time" with her analytical skills, strategic thinking, and strong interpersonal and communications skills. She could "hit the ground running." PX 80
- Ms Gehring found Ms Fraser the best candidate because of her well-established relationships within FNMA, her experience in planning; she was a tested vice-president with "excellent leadership and enterprise influencing skills." Ms Lapera, she wrote, was "execution oriented" with "mature relationships," but she "does not consistently see the big picture, sometimes

4

has a naïve view," and her "communications skills at executive level need improvement."
Ms Fraser was selected for the position.  Four months later, "totally demoralized," Ms Lapera resigned.

Ms Lapera is critical of Ms Fraser's selection for a number of reasons that do not bear on her discrimination claim.  She points out that Ms Fraser was permitted to apply nearly a month after the announced deadline for the submission of applications; that she had dinner with Ms Gehring before she applied; that the interview panel was handpicked by Ms Gehring; that Ms Fraser's selection was obviously decided before any interviews were conducted, that the process was a sham, conducted to give the appearance of fairness.  But the fairness and integrity of the FNMA selection process were not on trial.  An arbitrator or a judge presented with an employment discrimination claim does not second-guess personnel decisions, even if they are obviously unfair or wrong, unless and to the extent that they are infected by unlawful discrimination.

To make that determination, a well-developed decision process has evolved from the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  At the first step in a discriminatory treatment, non-selection case, a complainant must demonstrate that she belonged to a protected minority and was qualified for the job.  If those elements are established, the burden shifts to the employer to demonstrate that there was a legitimate, nondiscriminatory reason why the complainant was not selected.  If the employer makes such a showing, the burden then shifts back to the complainant, who can prevail by showing that the reasons given by the employer are pretextual.

At the first step of this burden-shifting decision-making process, I find that Ms Lapera was qualified for the position of vice-president for planning and alignment.  Indeed, I believe that point is conceded; she would not have been in the final three if she had not been qualified.  The question of whether she is a member of a minority protected by the DCHRA is more difficult.[1]  In her demand for arbitration Ms Lapera avers that she "has a body size which may be perceived by some as overweight."  According to her testimony, she weighs 220 pounds.  The arbitrator does not believe that – Ms Lapera is far from "obese" and has a very pleasant appearance – but, for purposes of this arbitration, she will have the benefit of the doubt: even without an objective standard for who is overweight and who is not, she is unquestionably less slender than the woman who got the job, so the burden shifts to FNMA to explain its selection.

The nondiscriminatory rationale offered by FNMA is that Nicola Fraser, already an officer of the company as Ms Lapera was not, better fit the "enterprise influencing" role Ms Gehring had in mind for her new vice-president for

---

[1] "Overweight" may be a protected category, but it's hardly a minority.

5

planning, that she had "executive presence" while Ms Lapera did not, and that her communications skills, especially for "presenting" to higher-ranking executives within FNMA, were far superior to Ms Lapera's. That rationale, if it was not a pretext for discrimination, was easily enough to legitimate the selection of Ms Fraser over Ms Lapera.

Attempting to show pretext, Ms Lapera asserts that "Ms. Gehring used the term 'executive presence' as a euphemism for the appearance of employees who were minorities, older, and overweight." Demand ¶ 16. She attempted to prove this by reference to Ms Gehring's use of an image consultant and by her alleged treatment of other people -- Ms Brumbaugh, Carmen Ovieto, Blythe Neumiller, Kathy Keller, and others. All of Ms Lapera's testimony about Ms Gehring's treatment of other employees was anecdotal, and most of it was either uncorroborated or disputed. Most importantly, however: except for Ms Lapera's testimony about her own belief and her own self-image, there was no evidence in the record that anyone said, thought, or acted upon a perception that Ms Lapera herself was overweight, or improperly dressed, or possessed of an unattractive body shape.

It is possible to prove a case of disparate treatment with circumstantial evidence. It was not done here.

### Award

Claimant shall take nothing. FNMA is obligated by its Dispute Resolution Policy to pay the fees of JAMS and the arbitrator. Each party will bear its own attorney's fees. Any and all claims not resolved by this Award are dismissed.

James Robertson
Arbitrator

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Lapera, Ana / Fannie Mae
Reference No. 1410006405

I, Sally Moreland, not a party to the within action, hereby declare that on November 25, 2014 I

served the attached Final Award on the parties in the within action by Email and by depositing true copies

thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at

Washington, DISTRICT OF COLUMBIA, addressed as follows:

Madonna McGwin Esq.
Seth Blonder Esq.
Fannie Mae
3900 Wisconsin Ave., NW
M.S. 1H-2S/05 Room #3221
Washington, DC   20016-2892
Phone: 202-752-7000
madonna_a_mcgwin@fanniemae.com
seth_j_blonder@fanniemae.com
    Parties Represented:
    Fannie Mae

David A. Branch Esq.
L/O David A. Branch & Associates PLLC
1828 L NW,
Suite 820
Washington, DC   20036
Phone: 202-785-2805
dablaw@erols.com
    Parties Represented:
    Ana Lapera
    Anne Gehring
    James Tomasello
    Jesus Lapera
    Joseph Hallett
    Kathy Keller
    Keith Smith
    Leslie Arrington
    Melissa Werner
    Michael Chen Young
    Nicola Fraser
    Nicole Harris

Damien G. Stewart Esq.
Fannie Mae
3900 Wisconsin Ave., NW
M.S. 1H-2S/05 Room #3221
Washington, DC   20016-2892
Phone: 202-752-7000
damien_g_stewart@fanniemae.com
    Parties Represented:
    Fannie Mae

Mr. Joseph Wilson
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC   20007
Phone: (202) 342-8400
jwilson@kelleydrye.com
    Parties Represented:
    Fannie Mae

Patricia Brumbaugh
Shandell Harris

Ira Kasdan Esq.
Kelley Drye & Warren LLP
8000 Towers Crescent Dr.
Suite 1200
Vienna, VA   22182
Phone: 703-918-2323
ikasdan@kelleydrye.com
    Parties Represented:
    Fannie Mae

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington,

DISTRICT OF COLUMBIA on  November 25, 2014.

Sally Moreland
smoreland@jamsadr.com