**UNITED STATES DISTRICT COURT**
**OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **ANA LAPERA** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 15-CV-000447 |
| | )   District Judge: Beryl A. Howell |
| **FANNIE MAE** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT FANNIE MAE'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now, Defendant Fannie Mae, formally known as the Federal National Mortgage Association, by and through its undersigned counsel, hereby files its Reply Memorandum in Support of its Motion for Summary Judgment.  Based upon the arguments and authorities set forth below and more fully in the Memorandum in Support of its Motion to Dismiss, Fannie Mae respectfully states that it is entitled to Summary Judgment on all claims asserted by the Plaintiff in this action.

PRELIMINARY STATEMENT

Fannie Mae has moved for summary judgment on all claims asserted by Plaintiff in this action.  First, Plaintiff failed to exhaust his administrative remedies and therefore, should be precluded from asserting an age claim in this case. Plaintiff was obligated to submit his age claims to pre-dispute arbitration.  She cannot credibly assert ignorance of such obligation considering she arbitrated her meritless race and personal appearance claims.  Even if she somehow could overcome that burden, Plaintiff's age claims are time-barred at this point.  Accordingly, summary judgment is appropriate.

Fannie Mae is similarly entitled to summary judgment on Plaintiff's allegations that the position she held in 2009 was improperly classified.  The undisputed material facts show that personnel in Fannie Mae's compensation department, who had virtually no connection with her made the decision on the classification of her position. Plaintiff has presented no evidence from which it could be inferred that the Compensation team harbored a discriminatory bias against her. In fact, the individual who levelled the position is also a member of the Plaintiff's protected class and, presumably would not discriminate her on that basis.  Furthermore, the evidence showed that Fannie Mae relied upon published, external market data to make the decision.  As such, the comparative information Plaintiff relies on in her Opposition Memorandum is completely irrelevant.

Plaintiff's failure to promote claims are also ripe for dismissal because Plaintiff cannot satisfy her obligation to prove that she was more qualified for the Vice President of Planning and Alignment position.  The evidence shows that Nicola Fraser had existing and strong relationships with the key executives, senior leaders, and that she had relevant experience making presentations to Fannie Mae's Board of Directors and its regulator.  In her Opposition, Plaintiff relies on assertions that she had good relations with leaders within a particular unit of the Company E-business.  While that is laudable, she has not, and did not have the relationships with the relevant executive management personnel necessary for the position.  A fact which she concedes.  To undercut any appearance of impropriety or inference of discrimination, the evidence shows that Ms. Fraser's candidacy for this position was unanimous and the criticism with Plaintiff's executive presence was shared not only by Ms. Gehring, but also by Human Resources.

Finally, Fannie Mae stands by the arguments and authorities set forth in its Memorandum in Support of its Summary Judgment Motion with regards to the viability of Plaintiff's Section

1981 claim. It is undisputed that "prohibits discrimination on the basis of race, but does not provide protection for individuals based solely on their 'place or nation of origin.'" *Quraishi v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.,* CIV. CCB-13-10, 2013 U.S. Dist. LEXIS 75683, 2013 WL 2370449, *2 (D. Md. May 30, 2013) (citing *Saint Francis Coll. V. Al-Khazraji,* 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987)). Although "race" may be "construed . . . broadly for purposes of § 1981," if "a plaintiff's allegations reference only his place of origin and do not focus on specific ethnic characteristics associated with that place of origin, the broad construction of race under § 1981 does not apply." *Id.* (quoting *Akinjide v. Univ. of Maryland E. Shore,* CIV.A. DKC 09-2595, 2011 U.S. Dist. LEXIS 118276, 2011 WL 4899999, *8 (D. Md. Oct. 13, 2011)); *see also Akinjide,* CIV.A. DKC 09-2595, 2011 U.S. Dist. LEXIS 118276, 2011 WL 4899999 at *8 (noting that "[f]irst, the plaintiff must prove that he actually faced intentional discrimination based on his ancestry or ethnic characteristics, rather than solely on his place of origin, in order to invoke the broad construction of race under § 1981"). As set forth Fannie Mae's moving papers, Plaintiff has not articulated that Ms. Gehring or any other Fannie Mae employee targeted her because of any specific ethnic characteristics – as opposed to her national origin. *See* Tr. 237-248 attached as Exhibit 1[1].

## ARGUMENT AND CITATION OF AUTHORITIES

### POINT I

### PLAINTIFF'S AGE CLAIMS FAIL BECAUSE SHE DID NOT EXHAUST ADMINISTRATIVE REMEDIES

In the initial Motion, Fannie Mae established that Plaintiff is precluded from raising a cause of action for alleged age discrimination in this case. The Demand that Plaintiff brought in the

---

[1] Fannie Mae will refer to the arbitration transcripts as Exhibit 1.

arbitration raised three counts all of which sounded in race or personal appearance discrimination. [Facts ¶98]  Since Plaintiff did not fulfill her obligation pursuant to her agreement to arbitrate any and all employment disputes in arbitration, pursuant to the Dispute Resolution Policy ("DRP"), Plaintiff is precluded from asserting such claims in this Court. A copy of the Dispute Resolution Policy is attached at Exhibit 2.

Plaintiff makes two equally unpersuasive arguments to excuse her failure to properly assert a claim for age discrimination: (i) she mentioned that Ms. Fraser is in her mid-40s in the Demand and, somehow Fannie Mae should have been notified she was raising an age claim; and (ii) she should not have had to pursue an age claim because Fannie Mae's arbitration agreement, the Dispute Resolution Policy is unconscionable.  The Court should reject these absurd contentions and find that judgment as a matter of law is appropriate as to the Plaintiff's claims for age discrimination.

    1.   <u>Plaintiff Failed to Assert Age Discrimination in the Arbitration</u>.

Plaintiff did not assert a theory of age discrimination in the arbitration held before the Hon. James Robertson (Ret.).  Whether her failure to do so was by mistake or design, it does not alter the fact that neither Fannie Mae, nor for that matter Judge Robertson, reasonably understood Plaintiff to be pursuing age discrimination as a separate cause of action in arbitration. [Facts ¶98] "[N]otice pleading aims to produce a general chart of possible claims and defenses available to the parties before they embark on the voyage of litigation." *Lenkiewicz v. Castro,* 2015 U.S. Dist. LEXIS 157347  at *8 (D.D.C. Nov. 20, 2015) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The fact that Plaintiff referenced Ms. Fraser's approximate age in a single paragraph of her Demand, does not equate with actually asserting a cause of action for age discrimination.  By Plaintiff's logic, she should also be allowed to raise a claim of gender

discrimination at this time because she referenced that she is a female in the first sentence of Paragraph 6 of her Demand. [Facts ¶98]   Such a result would be absurd.  Moreover, Plaintiff's position would be extremely prejudicial to Fannie Mae which expended considerable time, money and resources in discovery and in a four-day arbitration where it had no reason to understand that Plaintiff was asserting any theory other than race and personal appearance or to defend against unknown claims.  Indeed, Plaintiff clarified, in the third paragraph of her Demand, "Fannie Mae engaged in discrimination against Ms. Lapera on the basis of race and personal appearance in compensation, evaluation of performance, and promotion. She did not mention or otherwise allude to age which she must have known was a possible claim.  Accordingly, the Parties arbitrated the alleged race and personal appearance claims only and those are the only theories of relief this Court should consider.

      2.  <u>Plaintiff's Actions Belie Her Claim that the DRP is Unconscionable</u>.

It is surprising, puzzling, and disingenuous that Plaintiff now claims she should be permitted to pursue age discrimination as a distinct cause of action without having first arbitrating it.  Plaintiff *voluntarily* filed her race and personal appearance claims in arbitration.  She did not claim the DRP was unconscionable and Fannie Mae was not required to compel the arbitration which was held before Judge Robertson.  In order to assert this theory of unconscionability, Plaintiff relies on a single, unpublished decision by a California State court, interpreting California State law. The *Carter* decision is an outlier.  It is representative of the continuing hostility of California State Court's to pre-dispute arbitration agreements that the United States Supreme Court recognized in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 342-343 (2010) (although these statistics are not definitive, it is **<u>worth noting that California's</u>** courts have been more likely to

hold contracts to arbitrate unconscionable than other contracts) (internal citations omitted)[2].  As such, this Court should exercise its discretion to ignore the *Carter* decision and join those other court's that have upheld the DRP just as other courts in California have done.  *See e.g., Allan v. Federal National Mortgage Association*, No. 30-2013-00629430-CU-WT-CJC (Cal. Sup. Ct. May 13, 2013) (ruling "that there is no substantive unconscionability as plaintiff has not demonstrated how the limits on discovery make it inadequate, and the attorneys' fee provision actually works in plaintiff's favor); *Sturge v. Federal National Mortgage Association*, No. CV 05-4216 RSWL (MANx) (C.D. Cal. Jan. 26, 2006) (granting Fannie Mae's motion to compel arbitration and finding that all disputes arising out of the plaintiff's employment must be arbitrated in accordance with the DRP).

Similarly, this court and numerous others have also upheld the pre-dispute arbitration provision found in the DRP. *See e.g., Skrynnikov v. Fannie Mae*, 2013 U.S. Dist. LEXIS 65295 (D.D.C. May 8, 2013) (finding that the DRP is a valid and enforceable arbitration agreement); *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259, 263 (D.D.C. 2012) (granting Fannie Mae's motion to compel plaintiff's SOX and Dodd-Frank claims to arbitration under the DRP); *Kimpson v. Fannie Mae Corp.*, 2007 U.S. Dist. LEXIS 23920 (D.D.C. Mar. 21, 2007) (granting Fannie Mae's Motion to compel arbitration of plaintiff's SOX claims because the dispute resolution policy was broadly worded to cover all employment claims); *Koridze v. Fannie Mae Corp.*, 2008 U.S. Dist. LEXIS 106270 (E.D. Va., Dec. 12, 2008); *Ellison v. Fannie Mae*, 2007 U.S. Dist. LEXIS 52994 at * 11 (N.D. Tx., Jul. 23, 2007) (finding there was "no question in this case that the parties entered into a valid agreement to arbitrate.").

---

[2] Indeed, in *Concepcion*, the Court ultimately held that overarching purpose of the FAA was to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings; requiring the availability of class arbitration was inconsistent with the FAA. *Id*.

Plaintiff's conclusory assertion that the DRP is unfairly lopsided in favor of the Company is without any merit.  Indeed, the DRP poses no undue burden on the Plaintiff.  In exchange for Fannie Mae employees' agreement to arbitrate their employment claims before bringing suit in court, *in addition to continued employment*, Fannie Mae provides numerous other benefits to the employees.  For example, Fannie Mae pays all arbitration filing, case management, administrative fees charged by JAMS, and the fees of the Arbitrator.  The DRP further specifically provides that there will be: (i) no interference with the employee's right to file a charge or complaint with any administrative body; (ii) no interference with the applicable statute of limitations of an employee's claims; (iii) a reasonable and fair amount of discovery; and (iv) a written award stating the disposition, relief (if any), (v) a statement of reasons supporting the disposition and relief; and (vi) if the plaintiff is not satisfied with the Final Award, the employee may reject the award and pursue their claims in court – as plaintiff has elected to do in this action.  *See* Exhibit 2.

3. <u>Plaintiff's Age Discrimination Claim is Untimely and Fannie Mae is Within Its Right to Challenge the Viability of Such Claim</u>.

In her Opposition, Plaintiff asserts that Fannie Mae is estopped from challenging the timeliness of Plaintiff's age discrimination claims by the terms of the DRP.  However, the language she relies on at Page 40 of her Opposition is taken completely out of context.  The full paragraph does not support Plaintiff's assertion.  Rule 6 of the DRP states as follows:

**6. Time Limit on Submission of Claims**.

In order for an employee's claim to be eligible for arbitration, J·A·M·S must receive the employee's completed "Demand for Arbitration" form within the time limit set by law for bringing suit on that claim in court. If the Company contends that the claim was not made within the time limit, the arbitrator may be requested to decide the issue before any hearing on the substance of the claim. If J·A·M·S receives the "Demand for Arbitration" form within the time limit for bringing suit in court, but that time limit runs out during the arbitration, the Company will agree to extend the time limit for up to 60 calendar days after the date of the arbitration decision, so that the employee has an opportunity to bring

a timely suit on the claim in court, if he or she rejects the decision as provided in this Policy.

The language specifically contemplates an aggrieved employee submitting a "complete" Demand for Arbitration.  Rule 6 must also be read in conjunction with Rules 1 and 2 of the DRP which, Plaintiff conveniently failed to mention, but nevertheless provide:

**1.      Arbitration as Prerequisite to Lawsuit.**

[I]f an employee has a claim that is covered under Section 2 of this Policy, he or she must arbitrate the claim under this Policy before bringing suit on it in court.

**2.      Claims Covered by the Policy**.

The Policy applies to all claims that an employee might make against Fannie Mae (and its directors, officers, agents, or employees, in their representative capacities) involving a legally protected right, that directly or indirectly relate to his or her employment or the termination of that employment, even if the claim is based on facts or circumstances that occurred before the effective date of the Policy. These include claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law. For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act would be covered by the Policy. The Policy does not apply to any claim that is filed in court or with the EEOC or any other administrative or fair employment rights agency before the effective date of the Policy. The Policy also does not apply to any claim made in connection with workers' compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA, or pension plans, or to any claim of unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty. The Company may assert that the employee's claim is barred because it does not involve a legally-protected right and the arbitrator may be requested to rule on this issue as a preliminary matter before conducting a hearing on the substance of the employee's claim.

Plaintiff was specifically required to arbitrate her age discrimination claim as a prerequisite to filing suit.  She simply failed to do so.   And, as set forth in the original motion, Plaintiff cannot cure her failure to arbitrate the age discrimination claims at this time.  She had 300 days to pursue a charge with the Equal Employment Opportunity Commission under the ADEA.  She also had one year to pursue a private cause of action under the DCHRA.  She did neither.  Plaintiff claims

she is filing for discrimination that occurred as early as June 2009. If she "knew" that Fannie Mae had engaged in age discrimination in June 2009, she should have submitted her claim in arbitration or filed an action in court as late as June 2010. *See* D.C. Code §1403.16. Again, Plaintiff slept on her rights and her failure to diligently pursue her claim is inexcusable. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498 (1980) (alleged discrimination occurred and statute-of-limitations period commenced at time that termination was decided and communicated to employee, not at "the time at which the consequences of the acts became most painful" (internal citations omitted)); *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981) (limitations period began to run when employees received letters notifying them of decision to terminate their employment, not on date on which employment terminated); *Horvath v. Dodaro*, 2015 U.S. Dist. LEXIS 158521, at *35 (D.D.C. Nov. 24, 2015) (rejecting assertion of continuing violations because the coverage and the associated paycheck deductions subsequent to the denial of the plaintiff's 2004 request were the "'delayed, but inevitable, consequence[s]'" of the initial denial, they do not constitute discriminatory actions that can serve as the basis for a Title VII claim); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 69-70 (D.D.C. 2007). Accordingly, this Court should enter judgment as a matter of law on Plaintiff's age discrimination claims.

POINT II

PLAINTIFF FAILED TO SHOW THAT HER POSITION
WAS CLASSIFIED BECAUSE OF HER PROTECTED STATUS

In the initial Motion, Fannie Mae made cogent arguments explaining why Plaintiff's position was originally levelled at an "M" in July 2009, and why that original decision was not influenced in any way by the Plaintiff's race or other protected status. In her Opposition, Plaintiff strategically fails to provide the Court any context to the decision to level her position. Presumably because doing so would expose the fact that her race and personal appearance had nothing to do

with the decision(s) to level her job.  Instead, Plaintiff relies on her subjective view of the scope of her responsibilities, her comparison to other employees, her education and tenure with the Company. These are all false comparisons – they simply were not factors Fannie Mae's Compensation team used to level a position.  Thus, as set forth below and more fully in the initial Motion, judgment as a matter of law should be entered in favor of Fannie Mae with regard to the decision to classify Plaintiff's salary to a Level "M".

First, Plaintiff ignores the undisputed fact that the initial decision to classify her position was made by someone who shares her protected status.  It is undisputed that the member of the Compensation team who reviewed the Lean Six Sigma position Plaintiff held, Mauricio (Reese) Aguilar, is a Hispanic American.  Aside the fact that she disagrees with Mr. Aguilar's decision, Plaintiff admits she has no specific facts indicating that his decision was motivated by discriminatory animus. [Facts ¶14-20]   Under the circumstances this Court should find, as numerous other courts have done so, that no inference of discrimination arises where the individual who makes the allegedly discriminatory decision is of the same protected class as the aggrieved employee. [Facts ¶10-11, 13-15].  *See Glass v. Lahood,* 786 F.Supp. 2d 189, 216 (D.D.C. 2011); *Peterson v. Corr. Corp. of Am.*, 2015 U.S. Dist. LEXIS 130409,*7 at fn. 6 (N.D. Fla. 2015) (noting, courts have noted that "it is extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff"); *Eder v. City of New York*, 2009 U.S. Dist. LEXIS 11501 *24 (S.DN.Y Feb. 9, 2009); *Toliver v. Cmty. Action Comm'n*, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986) (finding that where decision maker is in the same protected class as plaintiff, claims of discrimination become less plausible); *Fletcher v. Phillip Morris USA, Inc.*, 09-284, 2009 U.S. Dist. LEXIS 63094 at *20 (E.D. VA. Jul. 13, 2009).

Plaintiff also ignores the context in which Mr. Aguilar made his original decision to level Plaintiff's position as an "M".  In this regard, Mr. Aguilar levelled the Lean Six Sigma position which the Plaintiff held based upon a comparison of the responsibilities of the position to external market data. It is undisputed that he made his decision without regard to Ms. Lapera's individual circumstances or performance. [Facts ¶13-20]  Thus, Plaintiff recitation of her experience, background, tenure, education were not relevant to Mr. Aguilar's decision.  Similarly, Mr. Aguilar did not compare the position Plaintiff held to any other member of the EPMO.  Rather, the relevant criteria was published market data about external Lean Six Sigma/Process Improvement positions in the industry.  [Facts ¶15]

Plaintiff's arguments regarding the classification of her position deserve little credence considering the individuals responsible for classifying Plaintiff's job had virtually no connection to her and there is an absence of evidence showing they had a discriminatory motivation.  The overwhelming weight of the evidence shows that the Compensation team made decisions regarding the level of the Plaintiff's position. [Facts ¶16, 18]  In her Opposition, Plaintiff asserts that in July 2009 her supervisor, Claude Wade, denied her challenge to the salary grade of her position. That assertion is inconsistent with her deposition testimony where she identified unspecified members of the Compensation team as the alleged discriminators. [Facts ¶19]  It is also belied by the evidence which shows that Mr. Wade promptly forwarded her request to challenge the level assigned to her position *the next business day* without characterizing or opining on whether he believed a change was necessary. [Facts ¶21]  It is also undisputed that when she made her request, Fannie Mae's Compensation team did not consider any of her individual circumstances, experience and performance because their decisions about salary grade are based

on the responsibilities of the position as compared to external market data, and in this case those factors did not support changing Plaintiff's salary grade. [Facts ¶13, 15, 18-20, 25]

In the initial Motion, Fannie Mae also established that, as a threshold matter, any claim based on the July 2009 request to change the level of her position must be denied because it occurred outside the statute of limitations period under both the DCHRA and § 1981. Plaintiff testified that she was notified in the summer of 2009 – *i.e.,* more than four years before filing her Demand for Arbitration – that her request had been denied. [Facts ¶16-17]. Plaintiff failed to address this issue in her Opposition Memorandum, and therefore, concedes that her July 2009 challenge is time-barred. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (supra); *Shuler v. Price Waterhouse Coopers*, 595 F.3d 370, 375 (D.C. Cir. 2010) (dismissing untimely ADEA claim and concluding that the failure to promote is not a compensation decision that would revive an ADEA claim).

Plaintiff failed to set forth any inference of discrimination with regard to the April 2011 "challenge." Here, the Human Resources Business Partner, Shandell Harris, asked Nicole Westbrook, the Director of Compensation, to review a job description and provide the salary grade level: "*Nicole, can you take a look at this and level it please? Thanks.*" [Facts ¶22-24] Given that limited context, Ms. Westbrook was unaware that Plaintiff was challenging the existing salary grade for her position; rather, she interpreted the request as one to level the job. The undisputed evidence shows that the Compensation team recognized that the job description matched an existing position (i.e., the Director, Lean Six Sigma position that Plaintiff held at the time), and which had already been analyzed and leveled as "M" by Mr. Aguilar [Facts ¶23-25] There is no credible evidence to suggest that Ms. Westbrook's response was motivated by any discriminatory bias. Moreover, considering the limited inquiry made to Ms. Westbrook and her reliance on the

decision made by Mr. Aguilar in 2009, her response should reasonably be viewed as the inevitable consequence of an allegedly discriminatory decision made in 2009, not a new act of discrimination within the limitations period. *See Horvath v. Dodaro*, 2015 U.S. Dist. LEXIS 158521, at \*35 (D.D.C. Nov. 24, 2015) (rejecting assertion of continuing violations because the coverage and the associated paycheck deductions subsequent to the denial of the plaintiff's 2004 request were the "'delayed, but inevitable, consequence[s]'" of the initial denial, they do not constitute discriminatory actions that can serve as the basis for a Title VII claim).

Plaintiff's contention that the level of her position should have been changed as a result of previous challenges because "her duties had not changed" is also without merit. *See* Opp. Mem. at 34.  In her Opposition Plaintiff ignores Fannie Mae's response to the May 2011 challenge to the level of her position. She does so for two reasons.  One, the evidence shows that the May 2011 request was presented as part of a Promotion in Equity Process ("PEP") request and it would not serve the Plaintiff's interests to advise this Court of the context in which the "challenge" was made to the Compensation team.  Unlike a request to level a position, a PEP request is used to potentially change an employee's salary and Compensation considers the individual's performance and other equity considerations. [Facts ¶25, 28-29] Second, the response of the Human Resources and Compensation professionals to the PEP request undercuts any inference of discrimination.  When she submitted the PEP request on Plaintiff's behalf, Ms. Harris also indicated that there were no higher-leveled director positions within the Lean Six Sigma job family into which Plaintiff could have been placed at the time.  As such, Ms. Harris recommended that Plaintiff's salary be increased to the top of the range from $184,000 to $194,000. [Facts ¶25-29]  The Compensation team also recommended that Plaintiff's salary be increased to $194,000 in order to create "a 17% differential between her [salary] and her direct [reports].

Furthermore, notwithstanding Plaintiff's contention that her actual duties had not changed, when Compensation received a revised job description which described a wider corporate scope, external focus and strategic slant that was not present in her previous job description, the Compensation team recommended that Plaintiff's position be re-leveled to an "N". [Facts ¶30-31] However, the only reason the level was not changed at that time was because Ms. Westbrook postponed acting on the recommendation to increase Plaintiff's level because it was unclear whether the Lean Six Sigma function would continue to report within the EPMO – again a fact that is beyond dispute and not indicative of discriminatory animus.  [Facts ¶32]

POINT III

THE FAILURE TO PROMOTE
CLAIM SHOULD BE DENIED

In the initial Motion, Fannie Mae established Nicola Fraser, who had already performed exceedingly well as a Vice President for two years, was unanimously selected for the Vice President of Planning and Alignment position because she was had the most relevant experience and was the most qualified person for the role. [Facts ¶75-78]   Plaintiff claims that she did not receive the promotion because Ms. Gehring discriminated against her based upon her race, age, and personal appearance.  To support this mistaken claim, Plaintiff offers evidence which she alleges shows Ms. Gehring's discriminatory bias, that Ms. Fraser was pre-selected for the vice president position, and alleged procedural irregularities

1. Plaintiff Fails to Show Direct Evidence of Discrimination.

Plaintiff fails to establish direct evidence that Ms. Gehring selected Ms. Fraser over her as a result of her allegedly discriminatory bias. In her Opposition, Plaintiff relies on disputed comments allegedly made by Ms. Gehring about other employees (not Plaintiff), which she contends show that Ms. Gehring harbored a discriminatory bias against people who were not

White, young, or slender.  She also alleges that Ms. Gehring's statements are direct evidence that she used the term "executive presence" as a euphemism for an employee's appearance.  Even assuming these statements could fairly be attributed to Ms. Gehring (statements Defendant vehemently denies), they do not constitute direct evidence of discrimination.

Direct evidence is defined as evidence which if believed by the fact-finder, proves the particular fact in question *without any need for an inference*.  Such evidence includes statements or written documents showing a discriminatory motive on its face. *See Sims v. District of Columbia*, 33 F.Supp.3d 1, 19 (D.D.C. 2014); *Manuel v. Potter*, 685 F.Supp.2d 46, 60 n. 11 (D.D.C. 2010).  Direct evidence is a "'smoking gun'" showing that the decision maker relied upon a protected characteristic in taking an employment action." *Id.* at 19 (quoting *PowerComm, LLC v. Holyoke Gas & Elec. Dep't*, 657 F.3d 31, 35 (1st Cir. 2011)). "Direct evidence is rare." *Portis v. First Nat. Bank*, 34 F.3d 325, 328 (5th Cir. 1994). And, in this instance, does not exist.

The disputed statements Plaintiff relies upon so heavily in her Opposition, even if they were made, do not constitute direct evidence because they are unrelated to the central issue, did Ms. Gehring fail to promote Plaintiff as a result of discriminatory bias?  The disputed statements shed no light on that issue.  They are not even tangentially related to selection for the vice president position. *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (holding that "[t]he record contains no direct evidence of discrimination — for example, a statement that itself shows racial or gender bias *in the decision* — that would generally entitle a plaintiff to a jury trial. (emphasis added); A fact-finder would necessarily have to infer from the alleged comments, that Ms. Gehring was more likely not to have promoted Plaintiff because of her age, race or personal appearance.  *See e.g., Sun v. D.C. Gov't*, 2015 U.S. Dist. LEXIS 131992 at * (D.D.C. Sept. 30, 2015) (holding statements are not direct evidence because they would require the jury to draw an

inference that plaintiff's supervisors were biased from such statements and then tie that bias to the adverse action); *Beeck v. Fed. Exp. Corp.*, 81 F. Supp. 2d 48, 54 (D.D.C. 2000) (holding that derogatory comments made by supervisors and others regarding an employee's age do not constitute direct evidence of age discrimination because there was no "a nexus between the remark and the adverse employment decision."

    2.   <u>Plaintiff Failed to Establish Sufficient Indirect Evidence of Discrimination</u>.

        a.   *Statements Unrelated to the Selection for the Vice President Position and/or to Plaintiff are Vague and Immaterial to the Issue of Discriminatory Intent*.

Faced with an absence of direct evidence of discrimination, Plaintiff alternatively tries to establish that Ms. Gehring harbored discriminatory bias against Plaintiff, in part, through certain *disputed* statements she contends Ms. Gehring made about other employees: (i) Ms. Gehring's purported comments about, or treatment of, persons other than Plaintiff (e.g., Carmen Oviedo, Kathy Keller, Patricia Brumbaugh) and (ii) the October 2012 "Image Impact" session in the EPMO.   Even if these statements or acts were related to race or personal appearance based on race, weight/body shape and age – which is a dubious proposition at best given the evidence – they were not made about the Plaintiff or done as part of the process for filling the Vice President of Planning and Alignment position and, therefore, are not competent to defeat summary judgment.

It is well-settled that when it comes to whether something is probative of discrimination against a plaintiff, "[c]ourts . . . disregard remarks by decision makers that do not pertain to the plaintiff or to the challenged employment action."  1 Barbara T. Lindemann, *et al., Employment Discrimination La*w 2-73 & n.229 (5th ed. 2012); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("statements by nondecision-makers, or statements by decision-makers, unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden"); *DeJesus v. WP Co. LLC*, 2015 U.S. Dist. LEXIS 130698 at *14 (D.D.C. Sept. 29, 2015) (noting,

"stray remarks, even those made by a supervisor, are insufficient to create a triable issue of discrimination where, as here, they are unrelated to an employment decision involving the plaintiff."); *Morris v. Jackson*, 15 F.Supp. 3d 94, 109 (D.D.C. 2014) ("stray remarks regarding "white boys" that were not directed at plaintiff and were not made by persons involved in the contested adverse action are immaterial); *Simms v. United States GPO*, 87 F. Supp. 2d 7, 9 n.2 (D.D.C. 2000) (*citing Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (affirming summary judgment in a discriminatory discharge case and finding that comments from a supervisor" we don't necessarily like grey hair" was "at best weak circumstantial evidence of discriminatory animus towards the plaintiff")); *Hollins v. Fannie Mae*, 760 A.2d 563, 576 (D.C. 2000)  ("One cannot infer from those [allegedly racial] comments that discrimination was a factor in Hollins' discharge, since they were not directed at him and were not made by decision-makers in a context related to the decision-making process").  *See Nurriddin v. Goldin*, 382 F. Supp.2d at 99; *McManus v. MCI*, 748 A.2d 949, 955-56 (D.C. 2000); *Figures v. Board of Pub. Utils.*, 967 F.2d 357, 360-61 (10th Cir. 1992) (in a Title VII case, evidence of racial comments is not probative of any issue in the case unless it is linked to relevant personnel actions). Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions. *Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1271 (8th Cir.) (*relying on Morales v. Dain, Kalman & Quail, Inc.*, 467 F. Supp. 1031 (D. Minn. 1979)), *cert. denied*, 484 U.S. 855 (1987).

Moreover, the statements Plaintiff attributes to Ms. Gehring are not sufficiently close in time to the selection for the Vice President of Planning and Alignment position to be probative of discriminatory intent. Plaintiff alleges that Ms. Gehring made disparaging comments about Ms. Neumiller and Ms. Brumbaugh not being representative of the way she viewed her organization because of the way they dressed and spoke in or around September 2012. Tr. 110:21-114:20

(Plaintiff). Similarly, Plaintiff alleges that Ms. Gehring made disparaging comments about other employees (not Plaintiff) in or around December 2012 during the performance calibration sessions. Although Fannie Mae vehemently denies that Ms. Gehring made any of these comments[3], assuming *arguendo* that the comments were made they are not sufficiently close in time to the alleged adverse action in this case to be probative of discriminatory intent.  In this regard, the selection for the VP of Planning and Alignment position was not made until July 2013, some 7 to 10 months after these disparaging comments were allegedly made. *See e.g., Francis v. Perez*, 970 F. Supp. 2d 48, 65 (D.D.C. 2013) (comments that were unrelated to the challenged adverse action, made either five months prior to any adverse action were not sufficient to create an inference of discrimination).

Furthermore, Plaintiff's assertion that Ms. Gehring forced Carmen Oviedo out of her role as a Vice President of Planning and Alignment because of a discriminatory bias (although untrue) is illogical in light of Plaintiff's later assertion in her Opposition Memorandum that Ms. Gehring criticized Ms. Keller's weight and appearance and lack of executive presence.[4] *Compare* Opp. Mem. at 10 with 14; Tr. 104:7-109:4 (Plaintiff).  Notwithstanding the fact that the entire premise of this assertion is baseless, given that the evidence showed that Ms. Oviedo had already left the EPMO before Ms. Gehring became the Senior Vice President responsible for that organization, assuming *arguendo* that Ms. Gehring replaced Ms. Oviedo with Ms. Keller, the inconsistency in

---

[3] Ms. Gehring specifically denied making any disparaging comments about Ms. Neumiller or Ms. Brumbaugh. Tr. 600:15-601:14 (Gehring).  Ms. Gehring denied telling staff or commenting on any staff member that their "stomachs or tummies were showing in staff meetings." Tr. 603:13-16 (Gehring). Ms. Gehring denied differentiating on any employee in a performance calibration session on factors other than leadership and did not comment on any employee's accent or personal appearance. Tr. 603:16-605:19 (Gehring)

[4] Ms. Gehring testified that in her conversation about Ms. Keller's style of dress, she relayed to Keller her own experience that when she (Gehring) had lost weight, a fried helped her dress for her new body shape and offered to go shopping with her, and that Gehring made a similar proposal to Ms. Keller. Tr. 627:8-628:14 (Gehring).

Plaintiff's arguments belies any inference of discriminatory intent. Tr. 597:9-598:22 (Gehring); 476:16-477:7 (Harris).

Finally, Plaintiff's argument regarding the Image Impact session are a non-sequitur. Statements made during in the "Image Impact" session are not probative of discrimination because such statements were made by the image consultant, not Ms. Gehring. *See McManus*, 748 A.2d at 955 ("None of the statements made about [the plaintiff's] personal appearance was attributable to . . . the two supervisors . . . who made the decision to let appellant go").

        b. *Purported Procedural Improprieties in the Selection Process are not Probative of Discriminatory Intent.*

In her Opposition, Plaintiff falsely asserted that the selection process for the Vice President of Planning and Alignment position was a "sham" because: (i) Ms. Gehring pre-identified Joe Hallet as a person she wanted for the Position before it was posted; (ii) Ms. Fraser's application for the Position was accepted after the date in the job posting; (iii) the scheduling of Ms. Fraser's interview before she submitted her resume; (iv) Ms. Gehring interviewing Plaintiff over lunch but not doing lunch interviews with Plaintiff or Mr. Hallet.

In fact, the testimony of Melissa Werner, the Fannie Mae recruiter charged with recruiting for the Position, indicates that none of these procedures contravened Fannie Mae policy or were necessarily improper. Tr. 416:20-418:14 (re: pre-identification of candidates); 434:16-435:12 (re: scheduling of Ms. Fraser's interview); Facts ¶53-54. The one possible exception being the interviewing of Ms. Fraser, but not Plaintiff or Mr. Hallet, over lunch; though Ms. Werner's testimony on this point is inconclusive. *Compare* Ms. Werner's testimony at Tr. 445:17-20 ("Q. Would that be improper for a lunch interview for just one applicant and not the other applicants? A. (Ms. Werner). Yes.") with Tr. 444:13-19 ("Q. . . . do [hiring managers] schedule lunch interviews for all applicants or **are they permitted to select who they want to have for a lunch**

**interview?** A. I think it varies based on schedule and availability so I don't know.") (emphasis added). Note also that, in the former excerpt, Ms. Werner says nothing about a violation of Fannie Mae policy.

Plaintiff also fails to establish that Fannie Mae engaged in any procedural irregularity with regards to the assertion that Ms. Gehring pre-identified Joe Hallet as a potential candidate for the Position. First, Ms. Gehring denied that she identified Mr. Hallet for the position. Tr. 606:17-607:5 (Gehring). But even if Mr. Hallet had been pre-identified, in and of itself, pre-selection is not unlawful when the pre-selection is based on the qualifications of the pre-selected candidate, and not on some basis prohibited by Title VII. *See Mackey v. Shalala*, 360 F.3d 463, 468-69 (4th Cir. 2004) (*citing Kennedy v. Landon*, 598 F.2d 337, 341 (4th Cir. 1979)); *see also Moore v. Mukasey*, 305 Fed. Appx. 111, 117 (4th Cir. 2008) ("Although the pre-selection of [one candidate] may have violated the rules and regulations of [the employer], it does not evidence the type of discrimination that is prohibited by Title VII." (*quoting Kennedy*, 598 F.2d at 341)). "The argument that a supervisor may have preselected an employee for a promotion "is not sufficient evidence for jurors reasonably to conclude' that the Defendant's explanation for hiring [another candidate] was pretext" when based on qualifications not prohibited by Title VII. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005). Moreover, considering that Ms. Fraser was selected for the Position, not Mr. Hallet, does not support Plaintiff's theory in this case – in this regard, Plaintiff identified Ms. Fraser as not slender.[5]

Even if these procedures violated a Fannie Mae policy, that still would not prove discrimination against Plaintiff so long as "the employer honestly believes in the reasons it offers." *See, e.g., Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[a]n employer's

---

[5] *See* Pl's. Resp. to Interrogatory Requests Nos. 7-8.

failure 'to follow its own . . . procedures, alone, may not be sufficient to support" the conclusion that its explanation for the challenged employment action is pretextual'"); *Oliver– Simon v. Nicholson*, 384 F. Supp.2d 298, 312 (D.D.C. 2005) (finding that "procedural irregularities . . . in the selection process" "may show the process to be imperfect, [but that] . . . is not sufficient to establish that [the employer's] proffered explanation is pretextual absent some actual evidence that [it] acted on a motivation to discriminate against plaintiff based on [a prohibited factor]").

Instead, the procedural defect must evidence the employer's discriminatory bias. *See Washington v. Chao*, 577 F. Supp. 2d 27, 46 (D.D.C. 2008) ("procedural irregularities do not raise an inference of racial discrimination unless there is a connection to the discrimination that the plaintiff is claiming" (*citing Adeyemi v. District of Columbia*, 525 F.3d 1222, 1228, 381 U.S. App. D.C. 128 (D.C. Cir. 2008)).   Plaintiff fails to make any connection between the alleged irregularities and the legitimate non-discriminatory reasons Ms. Fraser was unanimously selected for the Position.

> c.   *Plaintiff Failed to Establish that She was More Qualified for the Vice President of Planning and Alignment Position than Nicola Fraser.*

Plaintiff's failure to promote claims fail because, as set forth in the initial Motion, she was less qualified for the position than the successful candidate, Nicola Fraser. Fannie Mae has established that Ms. Fraser was selected because she best matched the requirements of the Vice President of Planning and Alignment position.  Ms. Fraser had good existing relationships and involvement with the Company's senior leadership team, the Board of Directors, the regulator, the Federal Housing Finance Agency, and most importantly, the Chief Financial Officer, David Benson. [Facts ¶64-66] She had excellent performance ratings, was a proven leader, and had been identified as "top talent" in a higher–level role than Plaintiff.  In this regard, Ms. Fraser served as the Vice President for Corporate Financial Planning and Analysis in the Corporate Finance

Department. [Facts ¶51, 81-83] In that position, Ms. Fraser's duties were similar to the responsibilities for the Vice President for Planning and Alignment in the EPMO. Ms. Fraser was responsible for making monthly presentations to senior executives at Fannie Mae and the Fannie Mae Management Committee. Also, Ms. Fraser already had strong relationships with Fannie Mae's CFO and SVP for the EPMO; and she regularly interacted with senior leaders and program managers throughout the organization, who had worked closely with Mr. Benson and Ms. Gehring in her then current vice president role. [Facts ¶74-78]

In her Opposition, Plaintiff disputes that argument and contends that she was more qualified that Ms. Fraser for the vice president position. She also alleges that Fannie Mae's concern over her communication skills are unfounded and she points to alleged improprieties in the selection process. Plaintiff's contentions are without merit and are insufficient to defeat the motion for summary judgment. Plaintiff's belief that her employer "got it wrong" is not enough "to suggest something more nefarious might be at play." *Johnson v. Weld Cty*, 594 F.3d 1202, 1211 (10th Cir. 2010). To establish pretext, a plaintiff must produce evidence that the employer did more than get it wrong. "[S]he must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. This is because Title VII licenses [courts] not to act as a "super personnel department" to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones. *Id*. Plaintiff has not established that she is uniquely disadvantaged by any procedural defects, if any, nor has she established an overwhelming disparity in qualifications between her and Mr. *Taylor. Jaramillo v. Colo., Judicial Dep't.*, 427 F.3d 1303, 1309 (10th Cir. 2005).

Plaintiff relies on factors that are either irrelevant or not material to the qualifications for the Vice President of Planning and Alignment position. As evidence for her contention that she is more qualified than Ms. Fraser, Plaintiff asserts that she had "extensive experience working directly with the CFO, vice presidents, and the president of e-business." Opp. Mem. at 28. Whether or not this assertion is true, it is nonetheless immaterial if Plaintiff had worked with the former CFO and president of a particular business unit (e-business). The flaw in Plaintiff's assertion, is that these are not the leaders with whom the Position was slated to interact. The position description required that the candidate would have relationships with the existing CFO (David Benson), the SVP of the EPMO (Ms. Gering), making presentations to the Management Committee of the Company and its regulator. Plaintiff admitted that at the time she applied for the Vice President for Planning and Alignment that she had "very little experience" with presenting before Mr. Benson and lacked familiarity with him. She had never presented to the FHFA (Fannie Mae's regulator), and had had not made a presentation to the entire Management Committee for several years prior to July 2013. [Facts ¶84] Moreover, the arguments in Plaintiff's Opposition are belied by her testimony where she agreed that Ms. Fraser had more experience presenting to Fannie Mae senior management and had a stronger relationship with Mr. Benson. [Facts ¶85]

Plaintiff also suggests, in her Opposition, that she was more qualified for the Position because of her experience working with business architecture and lean six sigma and that comprised a majority of the staff personnel. It is not in dispute that Ms. Fraser had less familiarity than Plaintiff on business architecture and lean six sigma. [Facts ¶79] However, those skills, comprised a comparatively small part of the responsibilities of the Vice President of Planning and Alignment. [Facts ¶75-76, 91-92] The evidence showed that Enterprise Planning comprised the vast majority of the responsibility for the position. Indeed, there were continuous discussions

about whether the lean six sigma/process improvement function would remain in the EPMO or move to another organization. [Facts ¶91, 97]

Contrary to Plaintiff's assertions Fannie Mae had a legitimate basis from which to conclude that Ms. Fraser's communication skills and ability made her more suited for the vice president position than Plaintiff. Ms. Gehring had observed Plaintiff make weekly presentations and did not believe she compared well to Ms. Fraser.  Shandell Harris had similar reservations about Plaintiff's ability to communicate at the level required for the position. Ms. Harris formed her impression of Plaintiff's communication abilities based upon her observation of Plaintiff during regular staff meetings in the EPMO.  Ms. Harris described Plaintiff as follows:

> It was a communication style.  Sometimes I observed Ana could ramble, kind of not be on point.  I think it's important in communicating with executives that you are crisp and to the point and provide detail as requested.  Tr. 478:18-22 (Harris).

> Yes. I had observed her in staff meetings and she tended to be sometimes emotional in the delivery of her message.

[Facts ¶87]  Given the stakes of the role, Ms. Gehring decided on a more proven commodity who had pre-existing relationships with senior Fannie Mae management, the regulator and the Board. She did so with the assurance that two other evaluators similarly viewed Ms. Fraser as the clear-cut candidate for the role. [Facts ¶80-81] Ms. Fraser more easily fit that bill and Ms. Gehring's decision had nothing whatsoever to do with the Plaintiff's protected characteristics.

## CONCLUSION

Based upon the arguments and authorities set forth above and in the Memorandum in Support of the Motion for Summary Judgement, Fannie Mae respectfully requests that the Court enter judgment in its favor on all claims asserted by Plaintiff in this case.

-25-

Dated: December 2, 2015                     Respectfully submitted,


                                            _____/s/ __DGS_____
                                            Damien Stewart
                                            Fannie Mae
                                            3900 Wisconsin Ave., N.W.
                                            Washington, DC 20016
                                            Tel. (202) 752-6871
                                            damien_g_stewart@fanniemae.com


                                            **Attorney for Fannie Mae**

-26-

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 2nd day of December 2015, a copy of the

foregoing Fannie Mae's *Reply Memorandum in Support of its Motion for Summary Judgment* was

served via the Court's ECF system on the following:

> David A. Branch, Esq.
> Law offices of David Branch & Associates
> 1828 L Street NW
> Suite 820
> Washington, DC 20036
> (202) 785-2805 phone
> (202) 785-0289 fax
> davidbranch@dbranchlaw.com

_____/s/__DGS_____
Damien G. Stewart